Mr. Chief Justice ShaRKey
delivered the opinion of the court.
The appellants filed their bill in the district chancery court against the appellees, to obtain payment of the amount of a promissory note out of the separate property of Mrs. Doyle, the note having been given by the wife, jointly with her husband. The bill alleges that Jane Doyle purchased r of Gee & Co. the assignors of the note, a quantity of merchandise, consisting of articles necessary for the use of the plantation, and for housekeeping purposes, and that, on a settlement of the account, she *74 executed the note. That she has a considerable separate property, consisting of slaves, which she acquired by deed of gift from her mother.
The respondents first demurred, but the demurrer was overruled, whereupon they answered. The answer denies, in the most positive manner, that the said Jane purchased the goods, or made any contract whatever, and avers that they were purchased by the husband alone, on his individual responsibility, and also that the wife never intended or promised, either before or since the purchase, that her separate property should stand charged with the payment. The answer further states that the note was given under the following circumstances: the clerk of Gee & Co. brought the account to the house of respondents for settlement, and requested that the wife should join her husband in a note for the amount due. This she at first refused to do, but ultimately reluctantly consented, not for the purpose, or with the intention, of charging her separate property. They admit that the wife has the slaves mentioned in the bill, which she acquired by deed of gift from her mother. The deed is made an exhibit, and bears date the 24th of March, 1841.
No proof was taken on either side, and on the hearing the vice-chancellor dismissed the bill. If the note constituted a valid charge on the property of the wife, and the case was sufficiently made out, the bill was improperly dismissed.
The deed of gift bears date subsequent to the act of the legislature, entitled “ an act for the protection and preservation of the rights and property of married women,” and on its face makes reference to the act. The provisions of that law must be regarded as controlling the question before us. From its title it would seem that something more was intended than to secure merely a separate ownership, and its provisions seem to have been framed with the view of restraining the wife from conveying, or disposing of her personal property in the usual modes of transfer. It secures the property owned before coverture, or acquired afterwards by conveyance, gift, inheritance, distribution, or otherwise, to the separate use of the wife, subject to the control of the husband, who is also entitled to the profits. The *75 last section declares that slaves owned by a feme covert, under the provisions of the act, may be sold by the joint deed of-the husband and wife, executed, proved, and recorded agreeably to the laws then in force, in regard to the conveyance of the real estate of feme coverts, “and not otherwise.” The mode of transfer is not only pointed out by reference to another law, but there is a prohibition as to any other mode of conveyance. In designating the mode of conveyance, and in limiting the capacity to convey to the prescribed mode, the legislature seem to have had it in view to protect the wife against the undue influence of the husband and others. The general rule at common law is, that a feme covert, having a separate estate, acts with regard to it as a feme sole; a rule which this statute must have been designed to limit, by requiring that the husband should join in the conveyance, and that it should be made under certain prescribed ceremonials. If she cannot convey the absolute title, except in the prescribed mode, it seems to follow, that, in accordance with the spirit of the act, she cannot incumber the property by charges, in any other way than that pointed out. The object of the act would be defeated in many instances, by holding that her contracts by bonds or notes amounted to a charge. But even if we were disposed to follow the English decisions on this subject, to their utmost extent, it is not clear that this particular contract amounted to a charge. The case of Hulme v. Tennant, 1 Br. C. C. 16, in which the separate property of a feme covert was held liable for the payment of a bond executed by the husband and wife, gave great dissatisfaction, and was supposed by Lord Eldon to have gone too far. The greater part of the money, in that case, was received by the wife. Bulpin v. Clark, 17 Vesey, 365, is the only other case that bears a close resemblance to the present, it being a case in which the separate property of a feme covert was held liable for the amount of a promissory note made by husband and wife; the note, however, was made on the contract of the wife alone. In this case the allegation that the note was given on the contract of Mrs. Doyle, is flatly denied by the answer, in which it is averred that she reluctantly con *76 sented to sign.it, and there is no-proof on the subject. But we deem the statute as conclusive on this subject, if not by its letter, at least in spirit. The decree of the vice-chancellor must be affirmed.